## Case No. 6,445.

### HEYDOCK et al. v. STANHOPE et al.

### [1 Curt. 471.] [1]

Circuit Court, D. Rhode Island. Nov. Term, 1853.

FRAUDULENT CONVEYANCE—INSOLVENCY—CONSTRUCTION OF STATUTE.

1. In construing the statute of Rhode Island to prevent fraudulent conveyances, this court follows the construction settled by the highest court of that state.

2. By the law of Rhode Island, an assignment of all the property of an insolvent debtor, for the benefit of all his creditors, stipulating for a release, and that the dividends of creditors refusing to become parties shall be paid to the assignor, is not fraudulent and void on its face.

This was a bill in equity, filed by the complainants [Henry W. Heydock and others], merchants, in the city of New York, against John T. Stanhope, William H. Cranston, Jacob Weaver, and Sarah H. Weaver, citizens of Rhode Island. The bill alleges that, at the June term, 1848, of this court, the complainants recovered a judgment at law against John T. Stanhope, whereon execution issued, and was levied on certain merchandise found in the shop of the defendant, Stanhope; and that the defendant, William H. Cranston, caused the same to be replevied out of the hands of the marshal, by a writ of replevin issuing out of and returned into the supreme court of Rhode Island, claiming the said merchandise as his own property; that the action of replevin was duly entered, but has not been tried, having been continued from term to term. The bill further alleges that, on the fifth day of June, 1848, Stanhope made an assignment of all his property to Mr. Cranston, in trust for the creditors of Stanhope, and annexed a copy of the deed of assignment, and charges that it was fraudulent as against creditors, and void. The particular grounds upon which the charge of fraud is rested, are

[1] [Reported by Hon. B. R. Curtis, Circuit Justice.]

noticed in the opinion of the court. The bill also alleges, that at or about the same time when the assignment was made, and in part execution of the same design, to defeat the plaintiff's execution, Stanhope conveyed some land to Jacob Weaver; and it further charges that Sarah Weaver, who is named in the schedule of preferred creditors annexed to the assignment, was not a bonâ fide creditor, her claim being fictitious, and inserted by a fraudulent concert between herself and Stanhope, to aid him in withdrawing a part of his property from his just creditors. The defendants having answered, the cause was set down, and heard on bill and answers.

Potter & Turner, for complainants.
Mr. Ames, for respondents.

CURTIS, Circuit Justice. The complainants, who are judgment creditors, ask the aid of the court to remove an obstacle to the levy of their execution on personal property, alleged to belong to the judgment debtor, upon which they assert they have acquired a lien. Their general ground is, that the debtor, just before their execution was sued out, and with an intent to prevent its levy, made a fraudulent conveyance of all his property to Mr. Cranston. Of course, it is incumbent on them to show that the conveyance, which is admitted to have been made, was fraudulent and void, as they allege. And inasmuch as the cause has been set down by the complainants, and heard upon bill and answer, all pertinent facts, stated in the answers, must be taken to be true, and the court must find the fraud upon, or as a legal conclusion from, those facts.

It is necessary, therefore, to examine the grounds upon which the bill rests the charge of fraud, and see how far they are confessed or denied by the answers. These grounds are, that the debtor made the assignment with an intent to delay and defeat the levy of the complainant's execution; that the assignor and assignee both had that end in view, when the assignment was made; that it was not intended to be a real transfer of property, for the benefit of bonâ fide creditors, but only a colorable arrangement, placing the nominal title in Mr. Cranston, but really leaving the whole control of the property, and its substantial ownership, in the debtor. And as evidence of this, the bill charges that the debtor was not in fact insolvent, and so not in a condition to make an assignment of all his property for the benefit of his creditors; that in point of fact, he continued, after the assignment was made, to have the custody and possession of the merchandise, and to sell the same as before; that the assignee exercised no supervision over him; that the schedules of property annexed to the assignment had no values or estimates of value, and were so left to prevent creditors from obtaining information; that a fictitious debt to Mrs. Weaver, the mother-in-law of the

assignor, was placed on the schedule of preferred creditors; and that about the same time when the assignment was made, the assignor made a fraudulent conveyance of some real estate to another defendant, Jacob Weaver.

Before examining the answers, to see how these charges are met, it is material to notice, that whatever may have been the actual intentions of the parties, no conveyance can be impeached as fraudulent as against creditors, unless it is capable, in point of law, of executing, or aiding in the execution of some illegal purpose. It is upon this principle, that an exercise of the common-law right of preferring one creditor to another, is sustained. If one creditor has recovered a judgment, and is about to levy an execution to satisfy it, and the debtor, being insolvent, conveys his property to another creditor, whom he chooses to pay in preference to the other, though his design is to delay and defeat the latter, yet his conveyance executes only a legal intent to pay a just debt, and so is valid. And therefore, if it were admitted in this case, that the purpose of the assignor was to delay and defeat the complainant's execution, if he has only exercised a legal right to appropriate his property to pay certain favored creditors in full, and to distribute the surplus ratably among all his creditors, his intent does not avoid the deed, which is not capable of executing or aiding in the execution of any thing but a legal intent. Whether, under the law of Rhode Island, it would avoid an assignment, otherwise valid, to a trustee, for the benefit of creditors, if it were proved that the assignor and assignee, when it was made, intended not to execute it, but to use it, only to enable the debtor to continue to enjoy the property assigned, I do not find it necessary in this case to decide. In Massachusetts, it has been held that it would. Johnson v. Whitwell, 7 Pick. 71. It is a question not free from difficulty in Rhode Island, because the statute law of the state enables any creditor interested in the assignment to come into the supreme court and compel the assignee to give an inventory of the property, and secure the execution of the trusts, by a bond with sureties, and the assignee is liable to be removed for neglect or misfeasance. Substantially the same ends are attainable by the aid of a court of equity, under its jurisdiction over trusts. Inasmuch, therefore, as the deed which conveys the property does not, at the same time, actually create the trusts in favor of creditors, which form a full and legal consideration for the conveyance, and which the assignee is compellable to execute, it is certainly difficult to maintain that his intention not to execute them vitiates the deed. It would seem that the deed was incapable, in point of law, of aiding in the execution of an intent to hold the property for the debtor, and so was valid, even if that intent existed. But, as I have said, I do not find it necessary to decide this question, because both the assignor

and assignee, in their answers, not only declare in general that the assignment was made in good faith, for the benefit of creditors, but they deny every fact alleged in the bill as evidence that the assignment was colorable. In respect to the possession and control of the property, the assignee says that by the assignment it was made his duty to judge whether it was most for the benefit of the cestuis que trust to sell the property at public or private sale; that he believed the latter to be best, and that from the knowledge of the business and customers, possessed by the assignor, he considered it expedient to employ him as his clerk, to make sales of the merchandise, under his supervision and control; that the property was in his possession, in a store hired by him, and not, at any time after the assignment, in the possession of the assignor; that he believes the assignor was insolvent, and the debt to Mrs. Weaver real and justly due, and he knows nothing of the conveyance to Jacob Weaver; that immediately after the assignment was made, he gave public notice thereof to all creditors of the assignor; and, so far as he has been able, has in good faith executed the trusts which it declares. Stanhope's answer contains the same facts concerning the custody and possession of the property, and declares that he was insolvent; that the debt to Mrs. Weaver was justly due for so much money lent to him by her, and denies that the conveyance of the real estate to Jacob Weaver was without consideration, though it admits that the consideration was a note payable to his wife, to whom the estate in the land descended. Mrs. Weaver's answer avers, that the debt to her, mentioned in the schedule, was justly due, for that amount of money lent, and states from what source she obtained the money. Jacob Weaver answers, that he was led to purchase the undivided interest which his sister, Mrs. Stanhope, had in this land, because it was the residence of his mother, who, he was afraid, might be disturbed, if Stanhope were to sell it to another, as he feared he might do, knowing him to be embarrassed by debts, and in want of money; that he paid the full value for the estate of his sister by a note, payable to her; and that he made the purchase in good faith. It is not necessary for me to investigate particularly the question of the validity of this sale of the real estate, because it is only as evidence of the fraudulent purpose of Stanhope, in making the assignment, that this transaction is introduced into the bill, no relief being prayed, and no case for relief stated, as respects this land, on which the complainants have acquired no lien at law, or made any attempt to levy their execution. And as the answers, both of the assignor and assignee, deny the fraud charged in the bill, and every specific fact therein charged, from which fraud is inferrible; and as these denials must be taken to true, it would be of no importance, if I were satisfied that other property was conveyed by

the debtor, about the same time, to defeat his creditors.

It remains only to consider an objection to the assignment, which appears upon its face. The assignment contains these clauses: "He shall pay to my creditors of the first class, enumerated in Schedule A, which said schedule is hereby referred to and made a part of this assignment, the full amount of their respective debts, in the order in which they are named, the amounts now due each of them, and which are stated as correctly as the same can now be ascertained; should the balance of said proceeds be insufficient to pay the remainder of my creditors, as enumerated in Schedule B, which said schedule is hereby referred to and made a part of this assignment, then he shall make an equal distribution of said balance among all said creditors of the second class, as enumerated in said Schedule B, according to their respective claims, provided said creditors shall discharge said Stanhope from all liability for the balance due from him to each, after the payment as aforesaid of each creditor's share of the estate and effects hereby assigned. If any creditor shall refuse to discharge said Stanhope as aforesaid, then, and in every such case, the share of such person or persons so refusing shall be paid by said assignee to said Stanhope." Whatever might have been the view taken by this court, of an assignment containing such clauses, I do not feel at liberty to treat the title, acquired by the assignee, as fraudulent and void under the statute law of Rhode Island, if the highest court of that state, construing the statute of Rhode Island, have deliberately and finally adjudged it to be valid. In Brashear v. West, 7 Pet. [32 U. S.] 615, the supreme court, considering the effect of a clause in an assignment requiring a release, and reserving the surplus to the debtor say: "The property is not entirely locked up; a court of equity may reach it; and whatever may be the intrinsic weight of the objection, it seems not to have prevailed in Pennsylvania; and the construction which the courts of that state may have put on the Pennsylvania statute of frauds, must be received in the courts of the United States." I understand it to have been settled in Rhode Island, under the statute of frauds of that state, that clauses, like those now in question, do not per se render void an assignment of all the property of a debtor, for the benefit of his creditors. The chief justice of the supreme court of Rhode Island has, upon my application to him, placed in my hands a copy of an opinion of that court, in the case of Dockray v. Dockray [2 R. I. 547], by which it appears that the construction put on the statute of Rhode Island, that these clauses do not vitiate an assignment, is settled, and under it a great number of titles to real as well as personal estate have been made during a considerable period of time. In the language of the supreme court, this construction must be received by me; and in conformity therewith, I declare these

clauses do not of themselves vitiate the deed under the statute of Rhode Island. The result is, that the bill must be dismissed, with costs.